UNITED STATES of America, Appellee,

v.

Benjamin Franklin BENNETT,
Appellant.

UNITED STATES of America, Appellee,

v.

James Edwin ALLEN, Appellant.

UNITED STATES of America, Appellee,

v.

Carl J. WILLIAMS, Appellant.

UNITED STATES of America, Appellee,

v.

Ellery JOHNSON, Appellant.

Nos. 76–1448, 76–1453, 76–1556
and 76–1557.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 17, 1976.

Decided Aug. 17, 1977.

As Amended Nov. 8, 1977.

Certiorari Denied Oct. 31, 1977.
See 98 S.Ct. 403.

Paul Johnson, Little Rock, Ark., for appellant, Bennett and on appellants' joint brief.

L. Gene Worsham, Little Rock, Ark., for appellants, Williams and Johnson and on appellants' joint brief.

J. H. Cottrell, Jr., Little Rock, Ark., for appellant, Allen and on appellants' joint brief.

Kenneth Stoll, Asst. U. S. Atty. (argued), and Wilbur H. Dillahunty, U. S. Atty., Little Rock, Ark., on brief for appellee.

Before HEANEY and ROSS, Circuit Judges, and VAN PELT, Senior District Judge.*

VAN PELT, Senior District Judge.

Appellants Bennett, Allen, Williams and Johnson appeal their jury convictions for violating 18 U.S.C. § 1955 which pertains to illegal gambling businesses. Appellants and three others (Deward Wharton, Michael Childers, and Nellie Jean Phinney) were indicted in a five count indictment[1] in the Eastern District of Arkansas. The five counts related to casino gambling (a dice table) conducted on five separate nights at the Spring Lake Club outside of Little Rock. There was a joint trial for six of the codefendants which resulted in a hung jury. Thereafter, Allen was severed, retried and convicted on Counts III, IV and V and

acquitted on Counts I and II. Appellant Bennett was severed, retried, convicted and acquitted on the same counts. A joint retrial was held as 'to Williams, Wharton, Phinney and Johnson. Williams was convicted on all five counts and Johnson was convicted on Counts III, IV, and V (the only counts with which he was charged). The jury was again unable to reach a verdict as to Phinney and Wharton. The government then elected to dismiss the charges against Phinney, Wharton and Childers.

Appellants' main contentions on appeal are:

1.  That the evidence was insufficient to convict them under 18 U.S.C. § 1955; and

2.  That the trial court erred in its instruction of the jury.

## I.  THE STATUTE AND ITS INTERPRETATION

By definition, an illegal gambling business which constitutes a violation of 18 U.S.C. § 1955:

. . . involves five or more persons who conduct, finance, manage, supervise, direct or own all or part of such business . . ..

Appellants Bennett, Allen and Williams admitted that they were conducting, financing, managing, and directing crap games on a partnership basis at the Spring Lake Club on the evenings of August 21 (Count I), August 26 (Count II), September 5 (Count III), September 10 (Count IV), and September 12 (Count V). Bennett, Allen and Williams were aware they were violating state law. However, their only concern was not violating *federal* law. Bennett and Allen had read the federal statute. There was evidence in all three retrials that the partners were aware of the five person requirement and were determined not to violate it. *See* Allen Tr. IV at 62, 149; Bennett Tr. II at 224; Williams Tr. II at 370. Appellants contend the evidence did not show five per-

---

* Robert Van Pelt, Senior United States District Judge, District of Nebraska, sitting by designation.

1.  Not all co-defendants were named in each count of the indictment.

sons were conducting[2] gambling and that certain jury instructions regarding the five person requirement were erroneous.

In order to solve the issues on appeal, we will first examine the law on what constitutes "conducting" a gambling business.

■ Our earlier opinions have examined the legislative history of § 1955 and concluded that the language of this section was specifically drafted so as to exclude customers or bettors. *See United States v. Thomas,* 508 F.2d 1200, 1205 (8th Cir.), *cert. denied,* 421 U.S. 947, 95 S.Ct. 1677, 44 L.Ed.2d 100 (1975); *United States v. Schaefer,* 510 F.2d 1307, 1311 (8th Cir.), *cert. denied,* 421 U.S. 978, 95 S.Ct. 1975, 44 L.Ed.2d 466 (1975). Although the term "conduct" was not defined in § 1955, the legislative history shows 18 U.S.C. §§ 1511 and 1955 were enacted together as sections of the Organized Crime Control Act of 1970. Reading the two sections together provides a basis for excluding only bettors, since in enacting § 1511 Congress stated:

The section applies generally to persons who participate in the ownership, management, or conduct of an illegal gambling business. The term "conducts" refers both to high level bosses and street level employees. It does not include the player in an illegal game of chance, nor the person who participates in an illegal gambling activity by placing a bet.

1970 United States Code Congressional and Administrative News at 4029. Several courts have held that anyone who participates in a gambling business other than a customer/bettor is counted as one of the five necessary persons conducting gambling. *United States v. Becker,* 461 F.2d 230, 232 (2d Cir. 1972), *vacated on other grounds,* 417 U.S. 903, 94 S.Ct. 2597, 41 L.Ed.2d 208 (1974); *United States v. Ceraso,* 467 F.2d 653 (3d Cir. 1972); *United States v. Joseph,* 519 F.2d 1068, 1071–72 (5th Cir. 1975), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976); *United*

*States v. Leon,* 534 F.2d 667, 676 (6th Cir. 1976); *United States v. Sacco,* 491 F.2d 995, 1003 (9th Cir. 1974). The court in *Sacco, supra,* stated:

Each person, whatever his function, who plays an integral part in the maintenance of illegal gambling, conducts an "illegal gambling business" and is included within the scope of § 1955. The sole exception is the player or bettor.

*Id.* at 1003. In *United States v. Joseph, supra,* the court found three defendants who helped a bookmaking operation by providing a line (point spread) and other gambling information as well as accepted bets from the operation which gave the operation a more favorable risk ratio could be counted toward the five person requirement. The court concluded that while the defendants

. . . may not have been lay-off bettors, they were more than individual players or bettors and consciously aided in the conduct of the Victoria bookmaking business.

*Id.* at 1072. Our own circuit has repeatedly recognized that where the illegal business is bookmaking a person who provides a regular and consistent market for lay-off betting is considered as aiding, conducting, and financing the illegal gambling business. *See United States v. Brick,* 502 F.2d 219 (8th Cir. 1974); *United States v. Thomas, supra; United States v. Schaefer, supra; United States v. Bohn,* 508 F.2d 1145 (8th Cir.), *cert. denied,* 421 U.S. 947, 95 S.Ct. 1676, 44 L.Ed.2d 100 (1975); *United States v. Guzek,* 527 F.2d 552 (8th Cir. 1975). The foregoing shows the scope of the Act with regard to conducting such business is quite broad.

## II. THE JURY INSTRUCTIONS

■ Appellants contend the trial court's basic instructions on the five or more requirement,[3] given at each trial with

---

2. The government contended Phinney, Wharton, Childers, and Johnson were conducting gambling, and there was no claim that they financed, managed, supervised, directed or owned the business.

3. Two instructions pointed out by appellants are the following:

In determining the number of persons involved in the operation of the gambling business, you may include anyone who, on the

only slight variations, were prejudicial in that they allowed a person to be counted who had no authority to manage, supervise, direct or conduct the gambling operation. Initially we note that appellants made no objection to these instructions and under Fed.R.Crim.P. 30 are now precluded from raising any error with respect to them. *United States v. Freeman,* 514 F.2d 171, 174 (8th Cir. 1975); *United States v. Cacioppo,* 517 F.2d 22, 23–24 (8th Cir. 1975); *United States v. Phillips,* 522 F.2d 388, 390–91 (8th Cir. 1975). In light of the discussion in Section I of this opinion, we believe the instructions were accurate and that a person may be counted who contributes to the gambling operation without having any control of it.[4]

■ Appellants Johnson and Williams claim the trial court erred while reinstructing of the jury on the five or more requirement in answer to a jury question.[5] However, once again, appellants are precluded from raising this as error under Fed.R. Crim.P. 30. The only objection made to the reinstruction of the jury was by Wharton's

> day of the alleged offense, for gain, willfully associated with, and participated in, the operation of said business to the extent that he or she was willfully contributing or attempting to contribute to the success of the operation.
>
> *     *     *     *     *     *
>
> In calculating the minimum number of five persons required by the federal statute, a person may be included if he or she is employed by the business and intentionally performs an act or acts which, in fact, contribute or contributes to the operation of the gambling business or to its success, even if the evidence does not identify that person by name.

4. See the suggested instruction on "conducting" in E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 61.05 (1977):

> The term, "conduct" as it is used in connection with the gambling business means to perform any act, function or duty which is necessary to or helpful in the ordinary operation of the business. A person may be found to conduct a gambling business even though he is a mere servant or employee, *having no*

attorney who objected to the giving of any explanations to the jury other than the original instructions. No grounds were given for the objection as required by Rule 30. Appellants' attorney, who represented all other defendants, did not join in this objection or make any objection of his own. In counsel's discussion with the court as to what type of response to make to the jury's inquiry, appellants' counsel did state he preferred the instructions simply be reread. Williams Tr. III at 550. However, a comment merely stating a preference does not rise to the level of an objection. *Willis v. United States,* 530 F.2d 308, 311 (8th Cir.), *cert. denied,* 429 U.S. 838, 97 S.Ct. 108, 50 L.Ed.2d 105 (1976). We find no plain error. The evidence hereafter discussed was sufficient to show that five persons were involved in the operation of the gambling business here.

> What is required is that five or more persons be *involved,* not that five or more persons be indicted or convicted.

*United States v. Calaway,* 524 F.2d 609, 616 (9th Cir. 1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 733 (1976).

> *part in the management or control of the business and no share in the profits.*
> A mere bettor or customer of a gambling business cannot properly be said to conduct the business. (emphasis added.)

5. During the Williams trial, the jury during its deliberations sent a note to the court stating:

> We are confused and need to know whether or not there has to be five people conducting gambling on each night to find one guilty. We also need to be cleared up on conducting.

After conferring with counsel, the court endeavored first to answer the jury's question directly, then reread the instructions relating to the offenses charged in each count, what the government was required to prove, and the determination of the five person requirement. After the rereading of these instructions, the court stated:

> I think you can see from the Court's instructions that you could include a person in meeting the five or more requirement that you did not feel was guilty of willfully and intentionally violating the statute and, therefore, would be not guilty, even though he or she would be counted in making the determination of five or more as required.

## III. SUFFICIENCY OF THE EVIDENCE

Appellant Williams was the only person convicted of Counts I and II, and all four appellants were convicted on Counts III, IV and V. Although the evidence was conflicting in the lower court, we view it in the light most favorable to the government on appeal. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942).

█ As previously noted, there is no dispute over the fact Williams, Allen and Bennett were running the crap game on all five nights alleged in the five counts of the indictment. Jean Phinney was Carl Williams' girl friend and was also present each of the five nights. There was evidence that each of the nights in question she solicited and/or served free drinks at the crap table,[6] and on September 5 allowed persons to exit and enter the club, closing the door behind them.[7] There was also testimony that what appeared to be a "tip jar", a glass containing money, was placed on the bar and that Phinney was given money which she placed in the jar.[8] Her services allowed the gamblers to remain at the table and continue placing bets. There was no testimony Phinney ever participated as a player or bettor in the games and the jury could have concluded that she was performing a function helpful to the operation of the business. If

Phinney is counted, then there are four of the requisite five persons on each night of the operation.

Through the testimony of Allen (at his own trial and Bennett's trial) and Williams, it was admitted that Ellery Johnson, Jean Phinney's son, was hired as a lookout or guard. He began work September 5 and worked the 10th and 12th and was to receive $20 per night for his services. The first two nights he was placed in a vehicle in the parking lot with an intercom system which he used on the night of the 10th to inform the partners of the presence of someone approaching the club. Thereafter, he was moved inside and on the night of the 12th was armed and placed in an upstairs room with the intercom. It is clear Johnson was employed by the gambling operation and was more than an innocent customer. Thus, the required five persons would be met for Counts III, IV and V. In addition, it is clear Childers handled the stick[9] on September 5, and Deward Wharton handled the stick on September 10 and 12. The testimony was in dispute as to how long they handled the stick and whether they were functioning as relief men for the operation or whether they were mere guests helping out. There was nothing to show they were ever paid for their services. However, the jury could have concluded that where the partners were aware of the

---

6. Only Williams was convicted on Counts I and II. Testimony concerning Phinney's serving of drinks is as follows for that trial:

   August 21: Williams Tr. II at 184, 203
   August 26: Williams Tr. II at 245, 232

For the remainder of the Counts, testimony may be found as follows:

  September 5: Allen Tr. I at 70, II at 363–64; Bennett Tr. I at 44, II at 278; Williams Tr. I at 39

  September 10: Allen Tr. II at 236–37, 263, 402; Bennett Tr. II at 266; Williams Tr. II at 203, 284

  September 12: Allen Tr. II at 263, 402; Bennett Tr. I at 52, II at 266; Williams Tr. II at 203.

7. Allen Tr. I at 52–53; Bennett Tr. I at 25–26; Williams Tr. I at 26–27, 38. Interestingly, Allen testified on cross-examination at his own

trial that he scolded Phinney for opening the door because he didn't want her to participate or become involved in the operation. When Allen testified at Bennett's trial he stated his only concern was Phinney did not know the customers. Allen's memory was then refreshed with the transcript of the Allen trial.

8. Phinney admitted placing $5 Agent Hale gave her in the jar but denied the $5 constituted a tip or that the jar and money in it belonged to her. It was defendants' theory throughout the trials that the jar merely contained money for the cigarette machine. However, the jury could have found otherwise.

9. Handling the stick refers to a person using a curved stick to rake the dice to the person whose turn it is to shoot; the person raking the dice generally calls out the point and indicates which individuals won and lost on that roll of the dice.

five person requirement and determined to avoid violating federal law, there would be no record of payments (the evidence showed the operation made all payments in cash and had no checking account or formal bookkeeping system) and that the partners would want to use other personnel in the actual operation of the game as little as possible. Wharton was never a participant in the game, although he was in attendance on September 5, 10 and 12. There was testimony that Childers did not participate in the game as a customer or bettor on the night he handled the stick. Agent Gingerich testified at all three trials that Childers picked up trash from the room. Additionally, at the Bennett and Williams trials, Gingerich testified that Childers watched who came and went to the restroom and acted more or less as a guard or lookout following people who left the game.

Finally, there remains the question of whether the required five persons were conducting gambling on the nights of August 21, 1975 and August 26, 1975 in order to sustain Williams' conviction on Counts I and II. We have already noted four persons the jury could have counted. In addition, William Harkrider testified that on August 21 an unknown person in addition to Bennett, Allen and Williams worked the table. Sam Vogel testified that on August 26 Bennett, Allen and Williams, in addition to a fourth person, worked the table. If the jury believed this testimony, the five required persons were present even though they could not be identified.

For the foregoing reasons, appellants' convictions are hereby affirmed.

HEANEY and ROSS, Circuit Judges, concurring.

We agree with the analysis set forth in the opinion of Judge Van Pelt as a proper and technical interpretation of the law as it applies to this case. We are, however, appalled at the fact that this case was prosecuted by the United States Attorney rather than the local prosecutor. It obviously has taken a great deal of the government's time and the court's time to investigate, make a

presentation to the grand jury, indict, try, retry, and appeal this case. We feel reasonably certain that Congress did not intend that the United States should take jurisdiction over every local crap game "conducted" by five persons, especially when some of the five participated in such a minor way as did Johnson and Phinney. In our opinion this case could have been handled more expeditiously at the state court level.

Federal courts are currently attempting to comply with the requirement that each federal criminal defendant receive a speedy trial. When United States Attorneys accept a case such as this, rather than letting local enforcement officials handle the matter, the objectives of the Speedy Trial Act are made more difficult to obtain; and the civil calendar of the Eastern District of Arkansas, already backed up because of a shortage of judges, is delayed even further.