**UNITED STATES of America, Appellee,**

v.

**John William HAMMOND, a/k/a "Big John", Appellant.**

No. 86–5419.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1987.

Decided June 16, 1987.

Rehearing and Rehearing En Banc Denied July 27, 1987.

---

Douglas W. Thomson, St. Paul, Minn., for appellant.

Elizabeth de la Vega, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

LAY, Chief Judge.

John William Hammond was convicted of one count of conducting a gambling business involving five or more persons in violation of 18 U.S.C. § 1955 (1982) and of four counts of aiding and abetting in the use of interstate facilities for transmitting wagering information under 18 U.S.C. § 1084 (1982). Hammond was sentenced by the district court[1] to three years imprisonment for violation of § 1955 for two years on each of the aiding and abetting counts, all sentences to be served concurrently. He was also fined a total of $30,-000. Hammond now appeals challenging the sufficiency of the evidence as to each count. We affirm his convictions.

**Background**

Between August, 1983, and January, 1984, Hammond ran an illegal bookmaking

---

1. The Honorable Donald D. Alsop, United States District Court for the District of Minnesota, presiding.

operation in St. Paul, Minnesota. In an attempt to avoid detection, Hammond hired at least three individuals to communicate with bettors over the telephone. One such employee was James Rebeck, whose job it was to receive telephone calls from bettors wishing to place wagers. Rebeck would record the names of the bettors, usually code names, and possibly their telephone numbers or location, on rice paper; he never actually recorded bets. The reason Rebeck used rice paper is that it can be quickly and easily destroyed by immersion in water. Periodically, Rebeck would receive telephone calls from either Hammond or one of two other employees, Steven Chiarella or William Klabunder, and give the caller the information provided by the bettors.

Chiarella and Klabunder each had lists, supplied by Hammond, of the code names used by Hammond's clients and the telephone numbers where they could be reached. Chiarella and Klabunder would record the names given to Rebeck, then call the bettors and record the respective wagers, also using water-soluble rice paper. Occasionally, they made long-distance telephone calls to take wagers. Every fifteen minutes or so an unknown caller, but in all probability Hammond himself, would call Chiarella and Klabunder and ask them to communicate the bets they had taken. Once communicated, Chiarella and Klabunder destroyed the tally sheets.

The main issue in this case was whether a fifth person, in addition to Hammond, Rebeck, Chiarella, and Klabunder, participated in Hammond's gambling operation to such an extent that he or she would be a person who "conducts" part of an illegal gambling business within the contemplation of 18 U.S.C. § 1955. The primary target of the government's case was Sandra Crawford, Hammond's friend for the previous ten years. In August, 1983, Crawford agreed to allow Rebeck to use the telephone at her residence for the purpose of taking incoming telephone calls from bettors. Although Hammond did not tell Crawford the reason he needed the use of her phone, she testified that "[h]e didn't have to." She knew that it was in connection with his gambling business. Crawford was paid fifty dollars every two weeks or every month for the use of her telephone.

Hammond supplied Crawford with a quantity of rice paper which Crawford made available for Rebeck's use. Crawford was often present when Rebeck took calls from bettors and observed him making notes. She occasionally answered the telephone herself and recorded the information given her, later relaying it to persons calling and requesting the names. Crawford also occasionally forwarded the call to Rebeck's residence when he could not make it to her house or when she did not wish to be disturbed.[2]

**Discussion**

Hammond contends that this court should adopt the interpretation of the word "conducts," as used in 18 U.S.C. § 1955,[3] that has been adopted by the Tenth Circuit.

---

**2.** The government contends that other individuals also helped conduct Hammond's gambling business by allowing Chiarella and Klabunder to use their telephones in their bookmaking operation. Since none of these individuals were any more involved in the business than was Crawford, further discussion of their roles in the operation is unnecessary.

**3.** Title 18 U.S.C. 1955 provides in pertinent part as follows:

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such businesses; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

(3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

In *United States v. Boss*, 671 F.2d 396 (10th Cir.1982), the Tenth Circuit held that waitresses who served drinks to dance hall customers, who were gambling in an illegal dice room at the hall, did not fall within the purview of section 1955's prohibition against one who "conducts" a gambling operation. *Id.* at 402. The court held that section 1955 contemplates that participants in an illegal gambling operation must perform duties "necessary" to the operation of the gambling business. *Id.* at 400. The waitresses, who did nothing more than serve drinks to the gamblers, were not "necessary" to the business within the meaning of the act. *See also United States v. Morris*, 612 F.2d 483 (10th Cir. 1979) (person who allowed principals in a bookmaking operation to use her apartment and who received telephone messages for the principals was not a conductor of the business since her actions were merely helpful to the operation of the enterprise).

■ The Tenth Circuit's approach has not been adopted in the clear majority of the circuits.[4] In *United States v. Bennett*, 563 F.2d 879 (8th Cir.), *cert. denied*, 434 U.S. 924, 98 S.Ct. 403, 54 L.Ed.2d 282 (1977), in approval of the majority position, this court stated that section 1955 includes anyone who participates in a gambling business other than a customer or bettor. *Id.* at 881. The scope of section 1955 is quite broad, all levels of personnel involved in the operation of a gambling business, not just those on the management level,

are to be considered in determining whether five or more persons conduct such business within the meaning of section 1955. *United States v. Meese*, 479 F.2d 41, 43 (8th Cir.1973); *see also United States v. Reeder*, 614 F.2d 1179, 1182 (8th Cir.1980). Accordingly, we hold that the trial court's denial of Hammond's requested jury instructions incorporating the Tenth Circuit's view of section 1955 was proper.[5]

■ Hammond further argues that he was convicted on insufficient evidence because even under the view of section 1955 as expressed in *Bennett*, Crawford and the other individuals involved were, at most, passive or inactive participants who may have been convicted for aiding and abetting Hammond, but not as participants. The evidence does not support this argument. Crawford clearly had more than a passive role. Not only did she knowingly permit her telephone to be used in the operation of Hammond's gambling enterprise, she was paid for that service. Crawford also supplied Rebeck with the water-soluble rice paper used to record bettors and, on occasion, actually recorded bettor's names herself. The fact that she was compensated for her inconvenience helps bring her within the purview of section 1955.

Hammond also argues that the evidence was insufficient to prove he knowingly aided and abetted in the use of interstate facilities for the transmission of wagering information. Title 18 U.S.C. § 1084 prohib-

4. *See Sanabria v. United States*, 437 U.S. 54, 70–71 n. 26, 98 S.Ct. 2170, 2182 n. 26, 57 L.Ed.2d 43 (1978), in which the United States Supreme Court noted:

> [N]umerous cases have recognized that 18 U.S.C. § 1955 (1976 ed.) proscribes any degree of participation in an illegal gambling business, except participation as a mere bettor. *See, e.g., United States v. Di Muro*, 540 F.2d 503, 507–08 (1st Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977); *United States v. Leon*, 534 F.2d 667, 676 (6th Cir.1976); *United States v. Brick*, 502 F.2d 219, 225 n. 17 (8th Cir.1974); *United States v. Smaldone*, 485 F.2d 1333, 1351 (10th Cir. 1973), *cert. denied*, 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974); *United States v. Hunter*, 478 F.2d 1019, 1021–22 (7th Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 162, 38 L.Ed.2d 107 (1973); *United States v. Ceraso*, 467 F.2d 653, 656 (3rd Cir.1972); *United States v. Beck-*

*er*, 461 F.2d 230, 232–33 (2nd Cir.1972), *vacated on other grounds*, 417 U.S. 903, 94 S.Ct. 2597, 41 L.Ed.2d 208 (1974).

5. The trial court instructed the jury:

> The term "conduct" as it is used in connection with the gambling business means to perform any act, function or duty which is necessary to or helpful in the ordinary operation of the business. A person may be found to conduct a gambling business even though he is a mere servant or employee having no part in the management or control of the business and no share in the profits.
>
> A mere bettor or customer of a gambling business cannot properly be said to conduct the business.

*See* E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 61.05 (1977).

its persons engaged in the business of wagering or betting from knowingly using a wire communication facility for the transmission in interstate commerce of wagers or information relating to wagers. One of Hammond's customers, Henry Olson, owned a second home in Arizona, from which Olson placed several bets during the relevant time period. Both Chiarella and Klabunder admitted calling Olson in Arizona on at least four occasions to take bets. Hammond contends that he did not know that Olson had moved to Arizona during this period of time. Olson testified that when he left for Arizona, he left word with someone other than Hammond and told that person the number where he could be reached.

In reviewing challenges to jury verdicts convicting a person of criminal acts, we must view the evidence in the light most favorable to the government and draw all reasonable inferences tending to support the verdict. *United States v. Pintar*, 630 F.2d 1270, 1276 (8th Cir.1980). The evidence presented here does tend to show that Hammond knew Chiarella and Klabunder were placing long-distance calls to take bets. Both men testified that Hammond supplied them with the bettors' code names and the telephone numbers where they could be reached. They both stated that when Rebeck informed them that Olson had called, they telephoned Olson in Arizona using the number supplied on the list. Given this evidence, it was reasonable for the jury to infer that Hammond knew that out of state calls were being made for the purpose of conveying wagering information.[6]

The judgment of the district court is affirmed.

BRIGHT, Senior Circuit Judge, concurring in the result.

While I concur in the result, I write separately to state my view that persons who do not directly participate in gambling operations should not be counted as persons "involved" in the "conduct" of such business within the purview of 18 U.S.C. § 1955(b).

Thus, neither cocktail waitresses nor passive lessors of the betting place who do not partake in the gaming process should be counted in the determination of whether or not a defendant "conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business," 18 U.S.C. § 1955(a), as has been determined by the Tenth Circuit in *United States v. Boss*, 671 F.2d 396 (1982) and *United States v. Morris*, 612 F.2d 483 (1979).

We need not disapprove of the results reached in the Tenth Circuit's decisions in order to affirm here. Crawford on occasion participated directly in the gambling operation and the evidence entitled the jury to conclude that Hammond's gambling activity included at least five persons.

---

**6.** Hammond also argues that the only reasonable interpretation of 18 U.S.C. § 1955 is that the five or more persons involved in the gambling business must be necessary to the operation of that business, and to convict him under the statute where one of the five was not necessary to the operation of the business deprives him of his constitutional rights to due process of law. In other words, Hammond contends, he did not have fair warning that his conduct would violate section 1955. We find this argument to be without merit. The due process clause merely requires that people should not be branded as criminals without fair notice that the legislature has forbidden certain conduct. *Knutson v. Brewer*, 619 F.2d 747, 749 (8th Cir. 1980). This does not mean, however, that a defendant will receive the benefit of the narrowest possible construction of a criminal statute. *Id.* at 751. "All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Rose v. Locke*, 423 U.S. 48, 50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975) (per curiam). Section 1955 gave Hammond sufficient notice under this standard.