**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 30 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

DOROTHY FRANCIS O'BRIEN,

      Defendant - Appellant.

No. 96-5228

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

WILLIAM CHRISTOPHER O'BRIEN,

      Defendant - Appellant.

No. 96-5229

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

MICHAEL ALLEN O'BRIEN,

      Defendant - Appellant.

No. 96-5230

---

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 96-CR-26-K)**

Richard Couch, Tulsa, OK, for Defendant - Appellant Dorothy Francis O'Brien.

Charles Whitman, Tulsa, OK, for Defendant - Appellant William Christopher O'Brien.

Ernest A. Bedford, Tulsa, OK, for Defendant - Appellant Michael Allen O'Brien.

John D. Russell, Assistant U.S. Attorney (Stephen C. Lewis, United States Attorney, with him on the consolidated brief), Tulsa, OK, for Plaintiff - Appellee.

Before **BALDOCK**, **LOGAN** and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

Dorothy and Michael O'Brien, together with their son Christopher O'Brien, appeal a jury's finding that they operated an illegal gambling business in violation of 18 U.S.C. § 1955, and conspired to do so in violation of 18 U.S.C. § 371. Their primary challenge on appeal is to the sufficiency of the evidence adduced at trial. Additionally, Christopher and Dorothy assert errors in the instructions given to the jury; and Christopher challenges the admission in evidence of certain records.

**I**

The O'Briens do not dispute that a gambling business was operated on property co-owned by Dorothy and Michael, the so-called "Blue House" in Ottawa County, Oklahoma. Inside the Blue House were seventeen video machines, each used by the establishment's patrons for gambling purposes. Patrons deposited money into the machines. The machines recorded deposits as a series of credits that could be staked on the outcome of the game played by the machine. If credits were left on a machine when a patron decided to stop playing, they could be exchanged for cash with one of two Blue House employees, Jean Buxton or her daughter, Debra Krauser, both of whom had been hired by Dorothy. When a player finished with more credits than she began, she would make money; if less, the gambling business did.

**II**

To secure a conviction under 18 U.S.C. § 1955, the government must prove that a defendant conducted, financed, managed, supervised, directed, or owned all or part of an "illegal gambling business." § 1955(a). That business must: (1) be in violation of state law; (2) "involve five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business"; and (3) remain in "substantially continuous operation" for more than thirty days or have a gross revenue of $2,000 in a single day. See § 1955(b)(1)(i)-(iii).

Section 1955 is not a specific intent statute.  United States v. Smaldone, 485 F.2d 1333, 1348 (10th Cir. 1973).  To be convicted under this provision, therefore, a defendant need not know that the gambling business involved five or more people, remained in operation for thirty days, or was violative of state law.  See United States v. Hawes, 529 F.2d 472, 481 (5th Cir. 1976) (holding that intent to violate state law is not necessary element of crime under § 1955); Smaldone, 485 F.2d at 1348; cf. United States v. Gardner, 454 F.2d 534, 535 (9th Cir. 1972) (noting that, absent legislative direction, knowledge of jurisdictional elements of offense not required for conviction).  The statute requires only a general criminal intent, which is satisfied whenever the defendant knowingly does an act made unlawful by the statute.  See United States v. Conley, 37 F.3d 970, 977 (3d Cir. 1994); United States v. Cyprian, 23 F.3d 1189, 1199 (7th Cir. 1994); Hawes, 529 F.2d at 481.

To say that the statute requires knowledge, however, does not answer the "question [of] what level of knowledge suffices."  See Staples v. United States, 511 U.S. 600, 621 (1994) (Ginsburg, J., concurring).  To establish the required mens rea, the government must demonstrate that a defendant knew that his or her act was one of participation in gambling.  Any other rule would inappropriately criminalize apparently lawful conduct because § 1955 "proscribes any degree of

participation in an illegal gambling business, except participation as a mere bettor." Sanabria v. United States, 437 U.S. 54, 70 n.26 (1978).

Federal criminal statutes should not be construed to "impose criminal sanctions on a class of persons whose mental state . . . makes their actions entirely innocent." Staples, 511 U.S. at 614-15 (holding that to secure conviction for possession of unregistered "firearm" under 26 U.S.C. § 5861(d), government must prove defendant knew features that make possessed weapon a statutory "firearm" even though § 5861(d) does not explicitly state any mens rea requirement); see also United States v. X-Citement Video, 513 U.S. 64, 68-72 (1994) (holding that because mere receipt of a package is "otherwise innocent conduct," conviction for receipt of child pornography under 18 U.S.C. § 2252 requires showing that defendant knows materials received are child pornography).

The O'Briens contend that there is insufficient evidence in the record for the jury to have found that five persons knowingly conducted, financed, managed, supervised, directed, or owned all or a part of the Blue House gambling business. Specifically, they argue that Michael was entirely unaware that gambling took place at the Blue House and was not involved in the operation, and that Christopher's occasional servicing of the video machines at the Blue House was insufficient to constitute knowing conduct.

In reviewing a conviction for sufficiency of the evidence, we examine de novo whether a reasonable jury could have found the essential elements of the offense beyond a reasonable doubt. See United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir.), cert. denied, 117 S. Ct. 226 (1996). In making this assessment, we view "the direct and circumstantial evidence, along with reasonable inferences therefrom . . . in a light most favorable to the government." United States v. Mains, 33 F.3d 1222, 1227 (10th Cir. 1994). Under this deferential standard, the O'Briens' claims fail.

As to Michael O'Brien, there is sufficient evidence to sustain a finding that he was a "director" or "owner" of the operation. Buxton testified that on one occasion she told Michael on the telephone that she had opened one of the video machines and counted the money it contained. Michael, she reported, "chewed [her] out royally," and told her that "[she] had no business doing that, that that was his personal affairs, which it was, and that was just like looking into his personal bank account." 8 R. at 556-57. Krauser testified that on several occasions at the Blue House Michael "talked to some of the players to see how everything was going." 7 R. at 256. In addition, Krauser testified that Dorothy O'Brien instructed her to have new customers at the Blue House fill out forms stating that they were not members of law enforcement. On at least two occasions, she telephoned Michael about whether she could allow a particular

individual to play even though she had run out of the relevant forms. 6 R. at 192-93. Krauser also testified that sometimes Michael telephoned her at the Blue House to "see[] if everything was all right, or if like a player would be upset over something." 7 R. at 222.

Christopher O'Brien told the FBI that he repaired the machines about once a week, which is sufficient to establish his status as a "conductor" of the business. As noted above, the general rule, consistent with the legislative history of the provision, is that § 1955 "proscribes any degree of participation in an illegal gambling business, except participation as a mere bettor." Sanabria, 437 U.S. at 70 n.26. It is true that "participation" does not encompass actions that are "merely helpful to the operation of the enterprise," United States v. Pinelli, 890 F.2d 1461, 1478 (10th Cir. 1989) (citing United States v. Morris, 612 F.2d 483, 494 (10th Cir. 1979)), but is limited to those actions "'necessary' to the operation of the gambling business," id. (quoting United States v. Boss, 671 F.2d 396, 400 (10th Cir. 1982)). "Conductors" extends to "those on lower echelons . . . , but with a function at their level necessary to the illegal gambling operation." Boss, 671 F.2d at 400. As there was sufficient evidence for the jury to find Christopher was the operation's regular maintenance technician, his status as a conductor is not open to question.

Moreover, the record supports the conclusion that Christopher knew the machines he repaired were used for gambling. Buxton testified that there were one or two occasions on which "Chris . . . filled in for me" at the Blue House. 8 R. at 551. Buxton also testified that her job encompassed exchanging game credits for cash, and thus her testimony adequately establishes that Christopher possessed the requisite knowledge. Id. at 585. There is other testimony in this vein. For instance, the jury could reasonably have inferred that Christopher saw the sign that several witnesses testified was posted in the Blue House, which indicated $100 and $50 "bonus" payouts could be won on the video machines. In addition, Krauser testified that when one customer won a lot of money, "Dorothy . . . made the comment that Chris had forgot to set whatever they set to make the payments come out the way they do." 7 R. at 228.

The O'Briens also argue that Michael and Christopher's involvement is insufficient to establish that five persons were connected to the business for each day of the requisite thirty day period. Appellants recognize that we have interpreted the 5-person and 30-day requirements of § 1955(b)(1)(ii)-(iii) as disjunctive, see United States v. Grey, 56 F.3d 1219, 1222 (10th Cir. 1995), but nonetheless urge us to a different result. However, even were we inclined to undo our prior interpretation of the size and duration requirements of § 1955, which we are not, we could not do so absent en banc reconsideration or a superseding

contrary decision by the Supreme Court.  See In re Smith, 10 F.3d 723, 724 (10th Cir. 1993).

## III

The O'Briens' claims of insufficient evidence as to the number of persons involved in the gambling business do not directly question their convictions for conspiracy.  The explicit focus of their insufficiency argument is on whether they conducted an illegal gambling operation, a fact that is not required to prove a conspiracy violation.  See Iannelli v. United States, 420 U.S. 770, 785 n.17 (1975).  The overt act requirement for conspiracy "can be satisfied much more easily" than the acts required to establish a violation of § 1955; indeed, the overt act "can be innocent in nature, provided it furthers the purpose of the conspiracy." Id.  There is sufficient evidence in the record for the jury to have concluded that acts of this nature were committed by both Michael and Christopher.

Appellants' implicit challenge to their conspiracy convictions is that Michael and Christopher's involvement with the gambling business was so limited as to prohibit the inference of an agreement to conduct an illegal gambling business.  This argument fails.  There is sufficient evidence in the record to establish the participation of five people in the Blue House operation, and that participation is itself sufficient circumstantial evidence of an agreement to conduct the gambling business.  See United States v. Gilley, 836 F.2d 1206, 1210

n.5 (9th Cir. 1988) (noting that, in context of § 1955 conviction, "conspiratorial agreement may be inferred from the completed act"); United States v. Greco, 619 F.2d 635, 640 (7th Cir. 1980).

**IV**

Christopher O'Brien brings two further objections to his conviction. First, he contends that the district court abused its discretion in refusing a requested jury instruction that § 1955 is only intended to criminalize "business-type gambling operations of considerably greater magnitude than those which simply meet the statutory minimum requirements of 5 persons and 30 days of continuous operation." 1 R., Doc. 40. We disagree. Section 1955's "statutory minimum requirements" for conviction are just that—the statutory minimum. To have the court state additional "requirements" would contradict the plain language of § 1955.

Christopher also maintains that certain Blue House records were admitted in evidence in violation of Rule 404(b) of the Federal Rules of Evidence. We review admission of this evidence for abuse of discretion. See United States v. Wacker, 72 F.3d 1453, 1468 (10th Cir. 1995). No abuse has been shown. The evidence at issue consists of a ledger kept by Krauser and Buxton detailing the accounts of the gambling operation conducted at the Blue House. Although some of the entries in the ledger relate to a period outside of that stated in the

indictment, the district court held it admissible as evidence of other acts "intertwined" with the criminal acts charged in the conspiracy. See 7 R. at 208-09. It is well settled that Rule 404(b) does not apply to other act evidence that is intrinsic to the crime charged, and that "[o]ther act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined . . . ." See United States v. Lambert, 995 F.2d 1006, 1007 (10th Cir. 1993) (quoting United States v. Williams, 900 F.2d 823, 825 (5th Cir. 1990)). On appeal, Christopher gives no explanation of why or how the district court erred in determining the evidence to be intertwined. We therefore perceive no abuse of discretion.

## V

Dorothy O'Brien also raises a claim that the jury was improperly instructed. She argues that the jury should not have been given a general unanimity instruction, see 1 R., Doc 43, at 44, but a more specific instruction requiring the jury to agree unanimously on: (1) "the identity of the five or more persons; (2) what each of the five or more persons did, whether he or she conducted or financed, for example; and (3) which more than thirty days charged in the Indictment these five or more persons did these acts." 1 R., Doc. 42.

Even though Dorothy provides no authority for this instruction, her position is not without support. See Gilley, 836 F.2d at 1212-13; United States v. Jerome,

942 F.2d 1328, 1331 (9th Cir. 1991); cf. United States v. Phillips, 869 F.2d 1361, 1374-77 (10th Cir. 1988) (Seymour, J., dissenting) (discussing right to unanimous jury verdict). But it is a view that this Circuit has not adopted, preferring instead to follow an assumption "that a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications they find to be the predicate of the guilty verdict." Phillips, 869 F.2d at 1366 (quoting United States v. McClure, 734 F.2d 484, 494 (10th Cir. 1984)). Absent a "realistic possibility of jury confusion as to the acts which supported the conviction," which we do not perceive in this case, we will not depart from that general rule. Id. at 1367. Consequently, we discern no error in the general unanimity instruction given by the district court.

**AFFIRMED**.