**UNITED STATES of America, Plaintiff,**

v.

**Matthew TRUPIANO, et al., Defendants.**

No. 84-137CR(1).

United States District Court, E.D. Missouri, E.D.

March 20, 1986.

Irl Barris, St. Louis, Mo., for Trupiano.

Bernard Edelman, Clayton, Mo., for Pisani and Garozzo.

Martin Hadican, Clayton, Mo., for Williams.

David M. Rosen, Asst. U.S. Atty., St. Louis, Mo., for United States.

### MEMORANDUM

NANGLE, Chief Judge.

This matter is before the Court for a decision on the merits. Defendants Thomas Williams, Eugene Pisani and Fred Garozzo, under the direction and assistance of their counsel, entered into a stipulation with the Government in which they agreed to allow the Court to determine both the

facts and the law in their cases based on the evidence presented by the Government in the jury trial of defendants Matthew Trupiano and Frank Parrino.[1] Defendants Williams and Garozzo, pursuant to said stipulation, also agreed that the Court could consider their statements to agents of the Federal Bureau of Investigation. All three defendants further stipulated that no additional evidence would be presented by these parties for consideration by the Court.[2]

Defendants Williams, Pisani and Garozzo are charged, along with seven other individuals, with violating 18 U.S.C. § 1955.[3] Although the defendants did not request special findings of fact pursuant to Rule 23(c) Fed.R.Crim.P., the Court concludes that more detailed findings are appropriate in this case. *See Sullivan v. United States,* 348 U.S. 170, 174, 75 S.Ct. 182, 185, 99 L.Ed. 210 (1954); *United States v. Ramos,* 613 F.Supp. 115, 119 (S.D.N.Y.1985). The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulations of the parties, hereby makes the following findings of fact and conclusions of law.

## A. FINDINGS OF FACT

1. The parties stipulated to the fact that special agents for the Federal Bureau of Investigation participated in the following electronic surveillance:

  (a) Telephone number (314) 772–4113 at 2228 Edwards, St. Louis, Missouri.

  (b) Telephone number (314) 645–5139 at 5825 Southwest, Apt. 9, St. Louis, Missouri.

  (c) Telephone number (314) 487–1436 at 700 Peace Haven Drive, St. Louis, Missouri.

2. The parties further stipulated that the aforesaid electronic surveillance is contained in Government's Exhibits 28 through 36. With respect to these exhibits, the parties further stipulated that the agents who operated the equipment were competent to operate the equipment and that the equipment was operable and capable of recording conversations. The parties stipulated to the fact that the conversations are true, accurate, authentic and correct recordations of the conversations proffered. The parties stipulated that there have been no changes, deletions or additions made to the conversations listed in the stipulation. Finally, the parties stipulated that both the original and the duplicate tapes have been in the care and custody of Special Agent Ronald Kosednar, an agent for the Federal Bureau of Investigation, and at all times have been kept under lock at the FBI Headquarters in St. Louis, Missouri.

---

**1.** The stipulation between defendants Williams, Pisani and Garozzo and the Government specifically states that these defendants waive the following rights: their right to be present during the trial; their right to cross-examine the witnesses produced by the Government; their right to subpoena witnesses on their behalf; and their right to participate in the selection of the jury and to have the jury decide their cases. Prior to accepting the stipulation, the Court conducted an on the record colloquy concerning this stipulation in open court with each of the defendants. *See United States v. Martin,* 704 F.2d 267 (6th Cir.1983).

**2.** After the close of the jury trial for Matthew Trupiano and Frank Parrino, defendants Williams, Pisani and Garozzo were offered the opportunity by the Court to present evidence and/or oral argument. The offer was refused.

**3.** 18 U.S.C. § 1955 provides in pertinent part:
  (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.
  (b) As used in this section—
  (1) "illegal gambling business" means a gambling business which—
    (i) is a violation of the law of a State of political subdivision in which it is conducted;
    (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
    (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
  (2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.
  . . . .

3. It is further stipulated that Government's Exhibit 33 is a composite tape containing 45 conversations which occurred during the period from November 24, 1982 through January 16, 1983. The parties to these conversations are principally Thomas Williams, a/k/a "Roscoe", and Frank Parrino, a/k/a "Ben" and "Chico".

4. The Court, in the interest of brevity, will not attempt to recite the text of each conversation contained in Government's Exhibit 33. The Court will, however, highlight certain conversations which are indicative of the evidence upon which it bases its findings. On December 4, 1982 during the 2:22 p.m. conversation, Williams referred to "all his people" and that he "got 1800 and [he will] split it." On December 2, 1982, Williams informed Parrino that he was "balanced out, 11 and 9", and therefore, he did not need to move his line. During conversations on November 29, 1982 and December 2, 1982, defendants Williams and Parrino exchanged line information. At one point during a conversation on December 2, Williams stated that he was using "3 and 42" (referring to a line for the San Francisco game of San Francisco plus 3 points and 42 points for the over and under bet) and that "the service was using it". In a conversation with Parrino on January 3, 1983, Williams stated "I've been using 46". The "46" refers to an over and under bet. During the conversation on December 29, 1982, at 5:07 p.m., Parrino was questioning Williams about the line for the Alabama game. Parrino stated that he had not received the line yet and asked Williams what he had. Williams replied that some guys have "7½ and 50, others 8 and 50". In a conversation on November 25, 1982 at 2:45 p.m., Williams placed a bet with Parrino for "one dime [$1,000.00] on over 38 on Dallas". Later that same day, at 3:02 and 3:06 p.m., Williams asked Parri-

no to "scratch the last 500 on Cleveland [because] the guy called me [and wanted] $500.00 the other way": On December 12, 1982 at 11:54, Williams told Parrino he wanted Buffalo plus 1½ for five dollars (meaning $500.00). Three minutes later Williams called again and told Parrino to scratch Buffalo because he just got "three more plays". Parrino responded that he couldn't scratch the bet because he had already called it in. On December 20, 1982 at 7:47 p.m., Williams placed a six dollar (meaning $600.00) parley bet on Cincinnati plus three, under 51.[4] During the course of the conversation, Williams stated that he hoped the parley on Cincinnati would lose. In a conversation on December 26, 1982 at 2:58 p.m., Williams, while on the phone with Parrino, took several other bets from other individuals who were apparently in the room with him. Williams proceeded to place four bets on various professional football teams. Before each bet he would count up figures orally before placing the bet.

5. Based on the conversations contained in Government's Exhibit 33 and the items seized from Williams' home pursuant to a search warrant, Government's Exhibits 24, A through J, the Court finds that defendant Williams was conducting a bookmaking operation.[5] The evidence establishes that he would take bets from others, maintain his own line and replace layoff wagers with defendant Parrino. In addition, Williams and Parrino would frequently exchange line information. Finally, during their numerous conversations, Williams and Parrino also discussed the various games, exchanging opinions about scores and possible outcomes.

6. It has been further stipulated that the Government's Exhibit 36 is a composite tape containing 16 conversations which occurred during the period from November

4. A parley bet is a bet where the bettor is betting on two occurrences. In this case, it was that Cincinnati would not lose by more than two (Cincinnati plus three) and that the total score of both teams would be under 51. The normal payoff on a parley is 12 to 5.

5. Defendant Williams also stated to FBI agents, when interviewed during the execution of a search warrant at his residence, that he received bets from various callers and then laid off the bets to a person named "Ben" (Parrino). Williams also stated that "Ben" was one source he used for obtaining line information.

25, 1982 through January 8, 1983. The parties to these conversations are principally Nando Bartolotta and Frank Parrino.

7. The Court again, in the interest of brevity, will only highlight certain conversations from the composite upon which it bases its findings. During the conversation on December 30, 1982 at 6:41 p.m., Parrino told Bartolotta that he was "up a dime". During two conversations on January 8, 1983, Bartolotta, while placing bets with Parrino, stated that "he want[ed] the Raiders" and later that "he want[ed] New England". During other conversations, Bartolotta would call Parrino to get the latest line information then tell Parrino that he would get back to him. In other conversations, when discussing settlement, Parrino would refer to "he" rather than to Bartolotta.

8. Based on the conversations contained in Government's Exhibit 36 and the evidence seized from the person of Nando Bartolotta and from his residence, Government's Exhibits 27A through G, the Court finds that Nando Bartolotta was acting as an agent for the Trupiano-Parrino bookmaking operation by accepting wagers from some unnamed person or persons and passing them on to Parrino.[6]

9. It has been stipulated that Government's Exhibit 29 is a composite tape containing 23 conversations which occurred during the period from November 24, 1983 through January 17, 1983. Defendant Frank Parrino, a/k/a "Chico" and "Ben", was a party to each of these conversations. In a conversation between Parrino and Joe Beetz on December 14, 1982, Parrino told Beetz that I "run Tuesday night ... [and] payoff Wednesday night." During the conversations on January 1, 1983 between Parrino and Williams, Williams first stated that he wanted to switch a bet on the Arizona State game. Parrino then called Trupiano and informed him that Williams wanted to cancel a bet. Trupiano responded that he could cancel it if he wanted.

Parrino then called Williams back and told him his prior bet was cancelled, at which point Williams placed fifteen dollars ($1,500.00) on Arizona State plus two. On November 24, 1982 at 5:57 p.m., Parrino called a person known only as "Jack" and asked him for the line information. Two days later at 9:43 a.m., Parrino called "Jack" and asked for any changes in the line. Parrino then called "Jack" each day for the following three days, each time asking for changes in the line. There are numerous other conversations contained within the composite tape which demonstrate that Parrino would use "Jack" as a source of line information.

10. It has been stipulated that Government's Exhibit 28A is a composite tape containing 20 conversations which occurred during the period from November 25, 1982 through December 18, 1982. The parties to these conversations are principally Matthew Trupiano and Frank Parrino.

11. During the conversation on November 25, 1982 at 11:00 a.m., Trupiano asked Parrino what he had on each game. Parrino then related the totals of the bets on both sides of the contest. At one point, Trupiano asked, "We got anything on Dallas yet?". Later, in the same conversation, Parrino told Trupiano that he intended to leave at 2:00 p.m. even though there was a game at 3:00 p.m. Trupiano responded that he had to stay until 3:00 p.m. and to "tell your customers if they want to bet on the 7 o'clock game, do it now." On November 27, 1982 at 6:31 p.m., Trupiano and Parrino compared their bet totals to make sure that they were in agreement. Parrino then asked if he could close shop, to which Trupiano responded, "Yea, close it." During a lengthy telephone call on December 3, 1982 at 6:28 p.m., Trupiano instructed Parrino to give a rundown of the bet totals they had to a person named "Fatman" (who later turned out to be defendant John Vogt). Trupiano stated that he had "arranged something" and that Parrino should

---

**6.** Nando Bartolotta pleaded guilty to the charge of violating 18 U.S.C. § 1955 on September 6, 1985.

just wait until "Fatman" called and then give him the information. During a conversation on December 7, 1982 at 4:53 p.m., Trupiano stated to Parrino that he was on his way over. Trupiano and Parrino then discussed paying off certain individuals on their winning bets.

12. Based upon the conversations contained in Government's Exhibit 28A, the other composite tapes, Government's Exhibits 28 through 36, and the exhibits seized from the persons of Trupiano and Parrino and from their residences, Government's Exhibits 20A through G and 21A through G, the Court finds that Trupiano and Parrino were conducting a bookmaking operation. Moreover, it is clear from the conversations that Trupiano played a management role in the operation over Parrino. Trupiano would give Parrino instructions about closing up and would make the final decision concerning rejecting or accepting bets. Trupiano also instructed Parrino to give the totals to Vogt, a/k/a "Fatman". Parrino's responsibility, therefore, was to accept both bets and layoff bets from bettors and other bookmakers. Parrino would then relay the totals to Trupiano.[7]

13. It has been stipulated that Government's Exhibit 30 is a composite tape containing 35 conversations which occurred during the period from December 3, 1982 through January 16, 1983. The parties to these conversations are principally John Vogt and Frank Parrino. On December 12, 1982 at 12:14 p.m., Vogt and Parrino discussed various line information. Vogt stated that he thought they should also take bets on basketball. Parrino stated "He [Trupiano] doesn't fool with basketball." In a conversation on December 11, 1982 at 11:10 a.m., Vogt asked Parrino how he was "sitting on the first game." Parrino replied that the bets were heavy on Philadelphia. Vogt then told Parrino to "take it down one" (referring to the line). Government's Exhibit 30 contains numerous additional conversations in which Vogt would call Parrino with line information and/or adjustments to lines that Parrino was using.

14. Based on these conversations and the exhibits seized from the person of John Vogt and from his residence, Government's Exhibits 22A through N, the Court finds that Vogt advised the Trupiano-Parrino bookmaking operation by providing line information to Parrino. Parrino, in turn, would give Vogt the total bets he had received on each of the games. Vogt then would direct Parrino to adjust the line as necessary.[8]

15. It has been stipulated that Government's Exhibit 35 is a composite tape containing 26 conversations which occurred during the period from November 25, 1982 through January 16, 1983. The parties to these conversations are Edwin Foreman, a/k/a "Eddie", and Frank Parrino. On November 27, 1982 at 11:04 a.m., Foreman and Parrino discussed their bet totals on certain college football games. Later that same day, at 2:45 p.m., while discussing various bets, Foreman stated to Parrino that "I have a lot of people who want to call me late ... I have nowhere to go...." In numerous conversations on the composite tape, Parrino would give Foreman the line changes. Conversations further demonstrate that Foreman was laying off bets to Parrino. For example, on December 30, 1982, Foreman called Parrino at 6:11 p.m., 6:23 p.m. and 6:41 p.m. to place bets on the West Virginia game. Again, on January 8, 1983, Foreman placed three different bets on Miami within approximately 20 minutes. During these last conversations, Foreman remarked to Parrino at one point, "I wished I played the games myself".

16. Based on the composite tapes and the exhibits seized from the person of Edwin Foreman and his residence, Government's Exhibits 26A through G, the Court finds that Edwin Foreman was a bookmaker. Moreover, the evidence clearly establishes that Foreman was exchanging line

---

7. Defendants Trupiano and Parrino were found guilty on March 4, 1986.

8. John Vogt pleaded guilty to the charge of violating 18 U.S.C. § 1955 on August 22, 1985.

information and laying off bets to the Trupiano-Parrino bookmaking operation.[9]

17. It has been stipulated that Government's Exhibit 31 is a composite tape containing 14 conversations which occurred during the period from November 26, 1982 through January 14, 1983. The parties to these conversations are Raymond Rask, a/k/a "Pete", and Frank Parrino.

18. During a conversation on November 27, 1982 at 10:15 p.m., Rask stated that "I put out a line of 48." On December 11, 1982 at 2:49 p.m., Rask called Parrino and asked him if he wanted some bets on San Francisco. When Parrino responded that everyone was going the other way, Rask stated "Good, it will help you out." There are other conversations contained in the composite in which Rask asked Parrino if he wanted some additional bets. During these conversations, Parrino would give Rask the line changes.

19. Based on the composite tapes and the evidence seized from the person of Raymond Rask and from his residence, Government's Exhibits 23A through N, the Court finds that Rask was a bookmaker. The Court also finds that Rask and Parrino exchanged line information and that Rask laid off wagers to the Trupiano-Parrino bookmaking operation.[10]

20. It has been stipulated that Government's Exhibit 32 is a composite tape containing 24 conversations which occurred during the period from November 24, 1982 through January 18, 1983. The parties to these conversations are Eugene Pisani, a/k/a "Gene", and Frank Parrino.

21. On December 6, 1982, Pisani called Parrino and placed a layoff bet on "under 41 for four dollars [$400.00]". Pisani told Parrino that on his over and under, his under was high. Pisani went on to state that he closed out the week with "a little profit". On December 19, 1982, Pisani asked Parrino to give him "two dollars [$200.00] on Atlanta". Pisani told Parrino he needed the bet because "some guy" had given him a play and then changed it. Pisani then stated he would "charge him fifty dollars for that". It is clear from other conversations on November 24, 1982 at 6:05 p.m. and December 11, 1982 at 1:03 p.m., that Pisani would call Parrino for the latest line information. On December 26, 1982 in the space of 11 minutes, Pisani made two separate telephone calls to Parrino to place bets on various football games. In conversations on January 6, 1983 at 8:43 p.m. and January 18, 1983 at 4:55 p.m., Pisani and Parrino discussed how they would settle up between themselves.

22. Based on the evidence in these conversations, the Court finds that Eugene Pisani was conducting a bookmaking operation. Furthermore, the conversations clearly establish that Pisani and Parrino were exchanging line information and that Pisani was placing layoff bets with the Trupiano-Parrino bookmaking operation.

23. It has been stipulated that Government's Exhibit 34 is a composite tape containing 20 conversations which occurred during the period from November 25, 1982 through January 16, 1983. The parties to these conversations are principally Fred Garozzo and Frank Parrino. On November 26, 1982 at 10:43 a.m., Garozzo asked Parrino if there were any changes in the line. After Parrino gave him the changes, Garozzo placed a "dime" ($1,000.00) bet on the Penn State game. Twenty minutes later, Garozzo called back and asked Parrino to "change his Penn State bet." Parrino replied that he could not because he had already called it in. On December 2, 1982 at 6:39 p.m., Parrino and Garozzo discussed at length the moving of a line from three to three and one-half. Garozzo stated that he was not going to move his line because he did not have much "action" on the game. Garozzo also suggested to Parrino that he not move his line until he was told by "the other guy". In a second conversation, just four minutes later, Parrino told Garozzo that he had another bet on San Francisco. Garozzo then told Parrino that he did not

---

9. Edwin Foreman pleaded guilty to the charge of violating 18 U.S.C. § 1955 on August 7, 1985.

10. Raymond Rask pleaded guilty to the charge of violating 18 U.S.C. § 1955 on August 7, 1985.

want to get him in trouble and that if he was told to move the line at a certain point, he should move it. Parrino replied that he was going to go ahead and move his line to three and one-half. Later that same day at 7:58 p.m., Garozzo told Parrino that "my books are evened out." On January 9, 1983, Garozzo told Parrino that he was busy and that he wanted to place a bet on "Dallas plus seven and one-half". Parrino responded that the Dallas line was changed to eight. Garozzo then told Parrino to give him Dallas at seven and a half for a nickel ($500.00) and Dallas at eight for a dime ($1,000.00), stating that "I can't eat it all." There are numerous conversations in the composite tape where Parrino gave Garozzo the line and/or line changes.

24. Based on the composite tape conversations and the documents seized from the person of Fred Garozzo and his residence, Government's Exhibits 25A through Q, the Court finds that Fred Garozzo was conducting a bookmaking operation. The evidence further establishes that Garozzo was exchanging line information and placing layoff bets with the Trupiano-Parrino bookmaking operation.

25. For the period from November 25, 1982 through December 31, 1983, the Trupiano-Parrino bookmaking operation took in no less than $2,000.00 of wagers per day. The total wagers placed with the Trupiano-Parrino bookmaking operation for the period from November 25, 1982 through November 29, 1982 was $92,000.00. For the month of December, the Trupiano-Parrino bookmaking operation accepted wagers in the amount of $241,485.00.

## CONCLUSIONS OF LAW

To support a finding of guilt, the Government must establish beyond a reasonable doubt three distinct elements: first, that the gambling business was conducted in violation of the laws of the State

of Missouri;[11] second, that five or more persons, including the particular defendant, knowingly and intentionally conducted, financed, managed, supervised, directed or owned all or part of such gambling business; and third, either that this gambling business was a substantially continuous operation for a period of 30 days or more, or, alternatively, that the gambling business, on one or more days, had a gross revenue of $2,000.00 or more. *See* 18 U.S.C. § 1955.

With respect to the first element, the Court finds beyond a reasonable doubt that defendants Williams, Pisani and Garozzo were engaged in bookmaking operations in violation of the laws of the State of Missouri. *See Findings of Fact Nos.* 5, 22 and 24.

The Court further finds that the requirement of five or more persons, including these defendants, has been established beyond a reasonable doubt. The evidence indicates that defendant Williams was conducting a bookmaking operation and regularly exchanged line information and placed layoff bets with the Trupiano-Parrino book. *See Findings of Fact No.* 5. The evidence indicates that defendants Pisani and Garozzo were conducting bookmaking operations and regularly exchanged line information and placed layoff bets with the Trupiano-Parrino book. *See Findings of Fact Nos.* 22 and 24. The evidence also indicates that in addition to the Trupiano-Parrino book, defendants Rask and Foreman were conducting bookmaking operations. It has also been established that Rask and Foreman regularly exchanged line information and placed layoff bets with the Trupiano-Parrino book. *See Findings of Fact Nos.* 16 and 19. In addition, it has been established that an unknown individual named "Jack" was a supplier of line information to the Trupiano-Parrino book. *See Findings of Fact No.* 9. Defendant Vogt was

11. Section 572.030 Mo.Rev.Stat. (1978) provides in pertinent part:
    1. A person commits the crime of promoting gambling in the first degree if he knowingly advances or profits from the unlawful gambling or lottery activity by:....

    (2) Engaging in bookmaking to the extent that he receives or accepts in any one day more than one bet and total of more than $100.00 in bets;....

brought into the operation on or about December 3, 1982, as an adviser/manager in the Trupiano-Parrino bookmaking operation. *See Findings of Fact No.* 14. Finally, the evidence establishes that Nando Bartolotta was acting as an agent for the Trupiano-Parrino book. *See Findings of Fact No.* 8.

The law does not consider a mere customer or bettor to be conducting or financing a gambling business which he patronizes. If, however, a defendant is a bookmaker and regularly exchanges line information or places or accepts layoff bets with another bookmaker, that defendant and the other bookmaker are considered to be aiding, conducting and financing the illegal gambling business. *United States v. Hawthorne,* 626 F.2d 87, 91 (9th Cir.1980); *United States v. Reeder,* 614 F.2d 1179, 1183 (8th Cir.1980); *United States v. Scavo,* 593 F.2d 837, 843 (8th Cir.1979); *United States v. Avarello,* 592 F.2d 1339, 1347 (5th Cir.1979), *cert. denied,* 444 U.S. 844, 100 S.Ct. 87, 62 L.Ed.2d 57 (1979); *United States v. Clements,* 588 F.2d 1030, 1037–38 (5th Cir.1979) *cert. denied,* 441 U.S. 936, 99 S.Ct. 2062, 60 L.Ed.2d 666 (1979); *United States v. Bennett,* 563 F.2d 879, 881 (8th Cir.1977) *cert. denied,* 434 U.S. 924, 98 S.Ct. 403, 54 L.Ed.2d 282 (1977). Therefore, the Court finds that defendants Williams, Pisani and Garozzo were all part of a single gambling enterprise with defendants Trupiano, Parrino, Rask, Foreman, Bartolotta and "Jack". Accordingly, the second requirement of five or more persons has been established beyond a reasonable doubt.

Finally, there is sufficient evidence in the record to indicate that the third requirement of either $2,000.00 per day or continuous operation for 30 days has also been established beyond a reasonable doubt. The Trupiano-Parrino book was in operation from at least November 25, 1982 through January 3, 1983. Moreover, the alternative requirement that the Government establish a gross revenue of $2,000.00 in any single day has also been met. *See Findings of Fact No.* 25.

Accordingly, the Court finds that defendants Thomas Williams, Eugene Pisani and Frank Garozzo are guilty beyond a reasonable doubt of a violation of 18 U.S.C. § 1955 as charged in Count I of the indictment.