UNITED STATES of America, Appellee,

v.

Frank C. PARRINO, Appellant.

UNITED STATES of America, Appellee,

v.

Matthew TRUPIANO, Appellant.

Nos. 86–1488, 86–1687.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 10, 1986.

Decided April 15, 1987.

Rehearing and Rehearing En Banc
Denied June 1, 1987.

Irl B. Baris, St. Louis, Mo., for appellant.

David M. Rosen, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

HENLEY, Senior Circuit Judge.

Frank C. Parrino and Matthew Trupiano appeal from a judgment entered by the District Court for the Eastern District of Missouri.[1] A jury convicted Parrino and Trupiano of violating various gambling and

---

1. The Honorable John F. Nangle, Chief Judge, United States District Court for the Eastern Dis-   trict of Missouri.

tax laws, 636 F.Supp. 1071 (1986). For reversal, appellants argue that the district court committed error (1) in its jury instruction defining gambling business members as used in 18 U.S.C. § 1955, (2) by ruling that electronic surveillance orders and search warrants were properly issued, (3) in its instruction to the jury identifying the acts necessary for a violation under 26 U.S.C. § 7201 and (4) by not granting their motion for acquittal of the tax evasion charges. We affirm.

Parrino and Trupiano conducted a bookmaking operation. In November of 1982 the government commenced court-authorized wiretaps on several phones used by Parrino. During December, 1982 a tap was placed on Trupiano's home phone. As a result of the recorded phone conversations, the government expanded its investigation to include John Vogt, Tommy Williams, Eugene Pisani, Raymond Peter Rask, Nando Bartolotta, Fred Roethler, Edmund Foreman and Fred Garozzo. On January 23, 1983 the FBI searched the persons and residences of these men as well as those of Trupiano and Parrino. All ten men were indicted for conducting an illegal gambling business in violation of 18 U.S.C. §§ 1955 and 2.[2] Trupiano and Parrino were also indicted for failing to comply with the wagering tax laws in violation of 26 U.S.C. § 7201. Trupiano was indicted for not complying with the tax laws in violation of 26 U.S.C. § 7203.

Based on the recorded telephone conversations and physical evidence seized during the searches, a government expert witness on gambling testified at trial that the ten men were involved in a gambling business. Parrino conducted the daily operations of the business. He was managed by Trupiano. Williams, Foreman, Pisani and Garozzo, all bookmakers, exchanged line information[3] with Parrino and made layoff bets[4] with him. Vogt served as an advisor to Parrino and Trupiano. He supplied line information and instructed Parrino to change the line on several occasions. A person, referred to in the recorded phone conversations as "Jack," supplied Parrino with line information. Bartolotta acted as an agent by accepting wagers and passing them on to Parrino and Trupiano.

Appellants initially contend the district court erroneously instructed the jury that a bookmaker who places layoff bets but does not receive them is part of an illegal gambling business. One who "conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business" violates 18 U.S.C. § 1955(a). The statute defines "illegal gambling business" to involve "five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business...." § 1955(b)(1)(ii).[5] The challenged jury instruction states:

---

**2.** Only Parrino and Trupiano went to trial before a jury. Roethler died before the trial began. Vogt, Rask, Foreman and Bartolotta entered guilty pleas. Pisani, Williams and Garozzo submitted their cases for determination by the court without a jury based upon the evidence presented at appellants' trial.

**3.** We have defined line information as:

the "odds" or "handicaps" or "point spreads" on the wagered contests. This is a list of the teams and events with a certain number of points attributed to the nonfavored team. To win a bet on the favored team, therefore, that team must win by a score exceeding the point spread given to the nonfavored team. The "line" is subject to change as a given event approaches and a bookmaker may alter the "line" on a particular event in order to try and even out the money wagered on each side.

*United States v. Thomas,* 508 F.2d 1200, 1202 n. 2 (8th Cir.), *cert. denied,* 421 U.S. 947, 95 S.Ct. 1677, 44 L.Ed.2d 100 (1975).

**4.** [A] bookmaker normally engages in "lay off" betting whereby he passes on to another bookmaker the amount of bets by which his own "book" is unbalanced; thus to the extent he loses to his own customers, he wins back from the other bookmaker, or vice versa. The "lay off" bet is therefore, in effect, bookmaker's insurance or reinsurance. Bookmakers, however, can and commonly do place personal wagers with one another which are not "lay off" bets.

*Thomas,* 508 F.2d at 1202 n. 2.

**5.** Besides involving five or more people, an "illegal gambling business" must also be operating in violation of State or another political subdivision's law and have been in operation for more than thirty days or have a gross revenue of $2,000 in any single day. § 1955(b)(1).

I have said that a mere customer cannot be said to conduct a gambling business which he patronized.

If, however, you find beyond reasonable doubt that a defendant is a bookmaker and that he regularly exchanges line information, or places or accepts layoff bets with another bookmaker, you may consider that defendant and the other bookmaker as being members of the same gambling business.

In the circumstances of this case, the instruction does not, as appellants contend, erroneously misrepresent the applicable principles of law.[6]

In determining whether people are linked for the purpose of § 1955, the evidence is to be looked at as a whole. *United States v. Reeder,* 614 F.2d 1179, 1183 (8th Cir. 1980).

The relationships between the bookmakers must be closely analyzed to ascertain whether they are truly independent or whether their relationships serve to weld them into a single gambling business, usually centering on the monitored bookmaker.

*United States v. Guzek,* 527 F.2d 552, 558 (8th Cir.1975). Although not a necessary requirement, the existence of layoff betting is important evidence tending to establish the connection between apparently independent bookmaking operations. *Id.; United States v. Schaefer,* 510 F.2d 1307, 1311 (8th Cir.), *cert. denied,* 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975). This court has not held that only a mutual exchange of layoff bets is relevant. To the contrary, a bookmaker, who places but does not receive layoff bets, may be part of an illegal gambling business. Indeed, the scope of the statute is quite broad. *See United States v. Bennett,* 563 F.2d 879, 881 (8th Cir.), *cert. denied,* 434 U.S. 924, 98 S.Ct. 403, 54 L.Ed.2d 282 (1977); *United States v. Bohn,* 508 F.2d 1145, 1149 (8th Cir.), *cert. denied,* 421 U.S. 947, 95 S.Ct. 1676, 44 L.Ed.2d 100 (1975); *see also United States v. Jenkins,* 649 F.2d 273, 275 (4th Cir.1981)

("In our view a lay-off man is not a bettor, but a bet receiver who takes the place of the bookmaker insofar as that particular bet is concerned."); *United States v. Morris,* 612 F.2d 483, 493 (10th Cir.1979) ("[I]t is not necessary that lay-off betting be a two-way street in order to bring two bookmakers together in an illegal gambling business."); *United States v. McHale,* 495 F.2d 15, 18 (7th Cir.1974). Therefore, the district court committed no reversible error in instructing the jury.

■ Appellants also argue that the wiretap orders and search warrants were improperly issued on the assumption that independent bookmakers who place layoff bets may be counted as participants in the gambling business. This contention is clearly without merit. Bookmakers who make layoff bets but do not receive bets from other bookmakers may be part of a § 1955 illegal gambling business although they are not necessarily so in all instances.

■ Appellants further contend that the district court erroneously instructed the jury of the conduct prohibited by 26 U.S.C. § 7201. The statute prohibits willful attempts to evade or defeat various taxes. The district court gave the following instruction to the jury:

To establish the crime of federal tax evasion as charged in the indictment the prosecution must prove beyond a reasonable doubt that defendant willfully attempted to evade or defeat a tax due the government. This involves the specific intent to evade the tax, and some willful commission, affirmative action or omission by defendant in furtherance of that intent.

By way of illustration only, a willful attempt may be inferred from such conduct as the handling of financial affairs in a manner so as to avoid making the usual records, or from any other conduct which would be likely to mislead or to conceal.

---

**6.** To the extent that it may have been desirable to instruct other than in the alternative, it is clear that error, if any, was harmless. The evidence was overwhelming that at least four

other bookmakers both exchanged line information with Parrino and made layoff bets with him.

Appellants argue that a willful omission is not sufficient to satisfy the requirements of § 7201. They contend that the instruction allowed the jury to find them guilty solely because they failed to file various tax returns. We disagree.

The instruction clearly indicates that the jury was to make a finding that appellants had the specific intent to evade the tax laws and acted consistent with that intent. The instruction did not improperly allow, as appellants contend, the jurors to infer the required intent from their conduct. We have allowed juries to infer willful intent from conduct. *See United States v. Berzinski*, 529 F.2d 590, 593 (8th Cir.1976). Moreover, the statute plainly states that a prohibited attempt to evade taxes may be committed "in any manner." Therefore, the district court properly instructed the jury as to the requirements of § 7201.

■ Appellants finally argue that the district court erred by denying their motion for a judgment of acquittal and submitting the tax evasion counts to the jury. Appellants contend that the government failed to produce evidence sufficient to demonstrate that they were aware of the tax laws' requirements. Our standard of review of a denial of a motion for a judgment of acquittal is well established:

> [W]e must examine the evidence in a light most favorable to the government, giving it the benefit of all reasonable inferences. We will then reverse only if a reasonable jury could not have found guilt beyond a reasonable doubt.

*United States v. Davis*, 785 F.2d 610, 619 (8th Cir.1986).

Several of the recorded phone conversations indicate that Parrino and Trupiano had specific knowledge of the tax laws' requirements. In addition, they conducted their bookmaking operation in such a way that intent to circumvent the tax laws could be reasonably inferred by the jury. The district court did not err in denying appellants' motion for judgment of acquittal.

Consequently, we affirm the judgment of the district court.