UNITED STATES of America,
Plaintiff–Appellee,

v.

Minh The TRAN, also known as Minh
Tu–Dinh Vo, also known as John
Doe, Defendant–Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Phap Ngoc NGUYEN, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Phuong Van LUU, Defendant–Appellant.

Nos. 93–2983, 93–3037 and 93–3095.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1994.

Decided Feb. 15, 1994.

Counsel who presented argument on behalf of appellants were: For Tran—R. Steven Brown of Springfield, MO. For Nguyen—Gary M. Wilson of Springfield, MO. For Luu—Roger C. Jones of Springfield, MO.

Counsel who presented argument on behalf of the appellee was David P. Rush, AUSA, of Springfield, MO.

Before HANSEN, Circuit Judge, Floyd R. GIBSON, Senior Circuit Judge, and KOPF,[*] District Judge.

KOPF, District Judge.

Phuong Van Luu (Luu), Minh The Tran (Tran), and Phap Ngoc Nguyen (Nguyen) appeal from their criminal convictions and resulting sentences in the United States District Court for the Western District of Missouri.[1] After carefully considering the arguments of each of the appellants, we affirm.

## I.

### A.

The grand jury in this case handed up a three-count indictment. Count I of the indictment charged each of the defendants with conspiracy to distribute "crack cocaine" from at least early November, 1992, until on or about December 14, 1992, in violation of 21 U.S.C. § 846. Count II charged that on or about November 27, 1992, the defendants, aided and abetted by each other, distributed crack cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count III of the indictment charged Luu with knowing and intentional possession of a machine gun on or about December 14, 1992, in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2).

Trial commenced on May 17, 1993, and on May 19, 1993, the jury returned verdicts of guilty on all counts.

Luu was sentenced to concurrent terms of imprisonment of 151 months on Counts I and II, and 120 months on Count III. Tran was sentenced to concurrent terms of imprisonment of 121 months on Counts I and II. Nguyen was sentenced to concurrent terms of imprisonment of 188 months on Counts I and II.[2]

### B.

Dan Schrader, an officer of the Springfield, Missouri, police department, began an investigation of "crack cocaine" being distributed out of the Saigon Inn restaurant by a group of individuals known as the "China boys."[3] We briefly summarize the evidence uncovered by this investigation.

On November 3, 1992, a confidential informant arranged for Schrader to be introduced to the so-called China boys. Schrader was introduced as a gun dealer and marijuana grower and distributor. Schrader proceeded to meet Luu at the Saigon Inn. Luu talked to Schrader about whether Schrader had access to guns, specifically referring to an "Uzi" and 9mm handguns. They also discussed marijuana.

Their conversation turned to crack cocaine when Luu asked Schrader what he needed. Schrader told Luu he was interested in purchasing "crack" and gave Luu fifty dollars. In return, Luu handed Schrader "rocks" of "crack" cocaine. When Schrader told Luu what he needed, Luu called to a second individual who walked over to Luu and

---

[*] The HONORABLE RICHARD G. KOPF, United States District Judge for the District of Nebraska, sitting by designation.

[1.] The Honorable Russell G. Clark, Senior United States District Judge for the Western District of Missouri.

[2.] Nguyen's criminal history category was V, whereas the criminal history category for Luu and Tran was I. All three men were sentenced at the low end of the applicable guideline range.

[3.] We use the term "China boys" in the same sense the phrase was used in the district court, that is, as the street name for the defendants' alleged enterprise.

poured 15 to 20 rocks of crack into Luu's hand. Luu gave Schrader his pager number so Schrader could call him and assigned Schrader the code number "07" with which to identify himself.

On November 5, 1992, Schrader paged Luu. They talked on the phone about purchasing a large quantity of crack, and Luu told Schrader to come to the restaurant. When Schrader arrived at the restaurant, Luu told him he would be back in a few minutes because he did not have that much on him and would have to get it. Luu returned approximately five to ten minutes later. He handed Schrader crack cocaine, and Schrader handed Luu three hundred dollars.

Luu also talked about guns on this occasion, as he did during almost every contact with Schrader. Luu told Schrader he used to have an "Uzi," but indicated with gestures that he did not like the "Uzi" because he could not conceal it. Luu preferred a 9mm Barretta because it was smaller.

Officer Counts testified that he conducted surveillance at the Saigon Inn on November 5, 1992. He saw Schrader arrive at the restaurant and contact Luu. Following their contact, Luu left and Counts followed him to the El Madrid apartments. Luu was at the apartment complex approximately two to three minutes before returning to the Saigon Inn where he again contacted Schrader.

On November 10, 1992, Schrader paged Luu and was told to come to the restaurant. When Schrader pulled into the restaurant parking lot, he saw Luu and Tran. The two men walked over to Schrader's car, and Luu and Schrader talked about purchasing marijuana. After their conversation, Tran walked away from the vehicle. Schrader and Luu went on to discuss guns, and Schrader purchased crack from Luu which was contained in a Tylenol bottle.

On November 11, 1992, Schrader made two purchases of crack at the Saigon Inn. An individual by the name of "Tony" handed him crack from a Tylenol bottle in exchange for cash. Schrader also purchased crack from Luu later the same day. When Schrader arrived at the parking lot, Luu walked over to his vehicle and sold him crack contained in a Tylenol bottle. When he paid Luu, Schrader observed Luu remove a wad of money from his pocket that appeared to be between two thousand and five thousand dollars in currency.

Schrader contacted Luu again on November 17, 1992. The two talked about guns and Schrader purchased crack from Luu. Luu and Schrader discussed purchasing a larger amount in the future.

On November 24, 1992, Schrader paged Luu and was directed to come to the restaurant. Schrader went to the restaurant and purchased crack cocaine from Luu. Once again, Luu had the crack in a Tylenol bottle.

On November 27, 1992, Schrader contacted Luu and told him he wanted to purchase an ounce of "crack." By ordering a larger amount, Schrader hoped to be able to identify the "stash house" and as many of the individuals in the organization as possible. When Schrader arrived at the restaurant, Luu was standing at the rear door and he motioned for Schrader to come in.

When Schrader entered the restaurant, Nguyen held the door open for him and told him to follow Luu. Schrader followed Luu into the men's rest room where they talked about the purchase of an ounce. After patting him down for a body microphone, Luu told Schrader he "makes five thousand to six thousand a night selling it by rock versus by the weight." Schrader eventually agreed to purchase 112 rocks for sixteen hundred dollars. Luu removed a Tylenol bottle and handed Schrader two hundred dollars worth of crack cocaine. Luu exited the rest room and then returned and told Schrader "they would be right back."

Schrader and Luu left the rest room and went to the dining area of the restaurant where they discussed future purchases of crack and guns. They discussed "fronting" Schrader's crack. Luu told Schrader he could work for him, and Luu would pay Schrader ten dollars for every one hundred dollars of crack he sold. Schrader testified that Luu told him "he wasn't concerned about me ripping him off because he had ways to find where I was and he didn't want to have to kill anyone."

After about ten minutes, Nguyen returned and spoke to Luu in a foreign language. Luu told Schrader, "It's here." The two then walked back to the women's rest room because it had a lock on it. Shortly after Luu and Schrader entered the rest room, Tran entered and handed Luu a Tylenol bottle. Luu poured rocks of crack from the bottle and gave Schrader the crack in exchange for sixteen hundred dollars. Schrader identified Tran in court as the person who handed Luu the Tylenol bottle.

Officer Counts testified that he saw Schrader arrive at the Saigon Inn on November 27, 1992. He then observed Tran and Nguyen leave the Saigon Inn, go to the El Madrid apartments, enter the building, and return to the restaurant. Officer Deeds provided similar testimony, specifically stating that he saw Tran and Nguyen enter apartment 104.

On December 4, 1992, Schrader paged Luu and purchased crack from him at the restaurant once again. Luu kept the crack in a Tylenol bottle. On this occasion, Luu and Schrader finalized the firearms Luu wanted to purchase. Luu wanted one "Mac–11" weapon and five 9mm handguns, and he agreed to pay Schrader in crack, cash, or a combination of the two.

On December 8, 1992, Schrader dialed Luu's pager number and Nguyen answered the page. When Nguyen called Schrader, Schrader told him to tell Luu he had the "hardware." Nguyen told Schrader he was aware of the transaction and that he was new and Luu's partner. Nguyen told Schrader he would do the gun deal with him and asked what Schrader needed. After Schrader told him, Nguyen instructed Schrader to come to the restaurant.

Officer Counts accompanied Schrader to the restaurant. When they arrived at the parking lot, Nguyen walked up to their vehicle and began discussing the guns. Schrader purchased crack from Nguyen which was contained in a Tylenol bottle. Schrader recognized Nguyen from the transaction of November 27.

On December 10, 1992, Schrader dialed the pager number and Nguyen answered the page. Schrader discussed with Nguyen the purchase of a thousand dollars' worth of crack. Nguyen directed Schrader to come to the restaurant and when he arrived, Nguyen instructed him to go with him into an apartment next to the Saigon Inn. The two men entered the apartment and Schrader exchanged one thousand dollars for crack cocaine. Schrader identified Nguyen in court as the person he bought crack from, stating "there's no doubt whatsoever."

On December 13, 1992, Schrader contacted Luu via his pager. The two set up the transaction for trading the firearms for crack to take place on December 14, 1992. Schrader contacted Luu by pager on December 14 and informed him that he had the firearms. Luu instructed Schrader to come to the restaurant. The plan was for Schrader to give a verbal signal to surveillance officers once Luu took possession of the firearms so that he could be arrested in the safest possible manner.

When Schrader arrived at the parking lot, Luu entered the vehicle. Luu examined one of the pistols and then examined the "Mac–11." Schrader explained the operation of the gun, and Luu handed him crack cocaine while continuing to talk about the firearms. Schrader testified that the "Mac–11" was in Luu's hands when he was arrested.

Upon his arrest, Luu was advised of his rights and Schrader asked him where the Tylenol bottle and the rest of the crack were. Luu told Schrader it was inside the Saigon Inn behind a mirror picture. Luu led Schrader to a location where he recovered a Tylenol bottle containing crack. Schrader identified government's exhibit 33 as a set of keys removed from Luu's pocket at the time of his arrest. Schrader asked Luu about a small silver key. An identical key was seized from Tran. Luu said the key was for the towel dispenser in the women's rest room. The key opened the dispenser and an empty Tylenol bottle was discovered inside.

Other keys recovered from Luu and Tran were found to fit the lock to apartment 104 of the El Madrid apartments. Following the arrest of Luu and Tran, Schrader participated in the execution of a search warrant at that apartment. There was no clothing or

furniture in the apartment. Baking soda boxes were found in the refrigerator, and there was crack cocaine in a "Baggie" inside one of the boxes. Schrader testified that razor blades are sometimes used to break crack into smaller rocks, and he identified government's exhibit 39 as razor blades found in the kitchen cabinet of the apartment. Schrader also identified government's exhibits 44 and 44A as a glass jar with a "Baggie" of crack inside. In addition, Schrader identified another government's exhibit as a plastic container which held a "Baggie" of crack in small rock form similar to what he had been buying from the "China boys."

Schrader identified a microwave and digital scale found in the apartment and testified that the baking soda, microwave, and digital scale were consistent with equipment used to convert cocaine powder into crack cocaine.

There was a good deal of additional evidence against the China boys. We need only highlight this evidence.

Sally Durham, the resident manager of the El Madrid apartments, testified. Ms. Durham stated that Nguyen came to her office on November 9, 1991, gave his employment at the Saigon Inn as a reference, and signed an application and lease agreement for apartment 104 using a false name. Nguyen signed the lease because the first person who had signed it told Ms. Durham that he was leaving town and his brother was going to take over the apartment.

Lori Martin testified pursuant to a cooperation agreement with the government. She identified the three defendants as the "China boys." She stated that she purchased crack cocaine from Luu approximately 30–35 times, from Nguyen probably five or six times, and once or twice from Tran.

Mark Mangan testified pursuant to a cooperation agreement with the government. He also identified the defendants as the "China boys." He stated that he purchased crack from Luu more than fifty times, from Nguyen more than fifty times, and from Tran

once. Mr. Mangan testified that he negotiated with Luu or Nguyen, but Luu and Nguyen conferred with Tran. According to Mangan, Tran appeared to be the leader.

Gene High testified pursuant to a cooperation agreement with the government. He testified that he purchased crack from Luu approximately fifty times, from Tran perhaps twenty times, and from Nguyen four or five times.

Leon Tyler testified pursuant to a cooperation agreement with the government. He testified that he purchased "crack" from Luu 20–40 times and from Nguyen approximately twenty times. Tyler said Luu and Nguyen were known to him as the "China boys."

## II.

We next examine the arguments asserted by counsel for Luu, Tran, and Nguyen.[4] We find none of these arguments persuasive.

### A.

We turn first to the arguments advanced by Luu.

#### (1)

■ At sentencing, the district judge classified Luu as a supervisor or manager pursuant to U.S.S.G. § 3B1.1(c). Luu argues that the district judge erred in this regard.

Section 3B1.1(c) of the United States Sentencing Guidelines provides for a two-level increase "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b). . . ."

■ Determination of the defendant's role in the offense for purposes of the Sentencing Guidelines turns on factual findings and, accordingly, will not be reversed unless clearly erroneous. *United States v. Manuel*, 912 F.2d 204, 207 (8th Cir.1990). "In determining whether a defendant deserves an enhancement under section 3B1.1(c), a sentencing court examines the nature of the defendant's role in the offense, the recruitment of

---

4. After also carefully considering Tran's supplemental *pro se* brief, we find that none of the arguments raised by Tran warrant reversal.

accomplices, the extent of involvement in planning or organizing the offense, and the nature and scope of the illegal activity." *United States v. Roberts,* 953 F.2d 351, 354 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 3008, 120 L.Ed.2d 882 (1992) (citation omitted). In addition, "[t]o be a manager, a defendant in a drug conspiracy need not control or manage the activities of the co-conspirators—it is sufficient that the facts show that the defendant managed the criminal activity." *United States v. Lawrence,* 918 F.2d 68, 72 (8th Cir.1990), *cert. denied,* 499 U.S. 941, 111 S.Ct. 1399, 113 L.Ed.2d 455 (1991).

The evidence supports the district court's finding that Luu was a manager or supervisor. For example: (1) on all but three occasions Luu conducted the transactions with Schrader which resulted in the sale of crack cocaine; (2) Luu attempted to recruit Schrader to sell crack for him; (3) Luu was observed in possession of large amounts of currency; (4) on two occasions, Luu was assisted in the sale of crack either by an unidentified individual or by Nguyen and Tran; and (5) Luu was the principal negotiator for the purchase of the "Mac–11" machine gun.

Luu argues he was not a supervisor because Officer Counts testified that he did not have information that Luu managed or supervised the conspiracy at the Saigon Inn. Be that as it may, the factual finding was for the district judge, not Officer Counts, to make. Since the factual finding of the district judge was not clearly erroneous, there was no error in the enhancement of Luu's sentence.

### (2)

■ Luu next argues that the evidence was insufficient to support his conviction on Count III of the indictment involving the "Mac–11" machine gun. Luu argues that he simply examined the "Mac–11" machine gun and was not in knowing, intentional possession of the weapon.

■ This court must examine the evidence in the light most favorable to the government, giving it the benefit of all reasonable

inferences, and we can reverse only if we conclude that a reasonable finder of fact could not have found guilt beyond a reasonable doubt. *United States v. Parrino,* 816 F.2d 414, 417 (8th Cir.1987) (citing *United States v. Davis,* 785 F.2d 610, 619 (8th Cir. 1986)).

The record in this case establishes that Luu knowingly, intentionally, and actually possessed the machine gun. For example: (1) Luu began negotiations to purchase firearms during his first encounter with Schrader and continued throughout nearly every encounter thereafter; (2) Schrader and Luu specifically agreed to conduct the exchange of firearms for crack on December 14, 1992, and when Schrader arrived at the Saigon Inn on that date, Luu entered his vehicle and examined the guns; (3) while examining the guns, Luu handed Schrader "crack" cocaine; and (4) when Luu was arrested, he was observed by more than one police officer to be in actual physical possession of the weapon.

### B.

We next turn to the arguments of Tran.

### (1)

■ Tran first argues that the evidence is insufficient to support a verdict of guilty as to Counts I and II of the indictment. Specifically, Tran argues the evidence was insufficient to show that there was a conspiracy, that he knowingly became a part of the conspiracy, or that he aided and abetted in the distribution of "crack" cocaine.

■ The existence of a criminal conspiracy need not be shown by direct evidence, but rather a common plan may be inferred from circumstantial evidence. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *Langel v. United States,* 451 F.2d 957, 961 (8th Cir.1971). The government must demonstrate a likelihood of illicit association between two or more people, but circumstantial evidence is certainly sufficient to do this. *United States v. Lewis,* 759 F.2d 1316, 1339–40 (8th Cir), *cert. denied,* 474 U.S. 994, 106 S.Ct. 406, 407, 88 L.Ed.2d 357 (1985). The absence of direct proof of an agreement obviously results from

the secretiveness and complexity of conspiracies, particularly those involving narcotics. *See Blumenthal v. United States,* 332 U.S. 539, 557, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947).

We think the evidence sufficiently established the existence of a conspiracy. For example: (1) all three defendants participated in selling Schrader a large amount of crack on November 27, 1992; (2) there were numerous other sales of "crack" by each defendant at the Saigon Inn during the same time frame; (3) Luu and Tran had keys to the "stash house" where "crack" was found and obviously processed; and (4) Nguyen signed the lease on the "stash house."

■ Once the existence of a conspiracy is shown, only slight additional evidence is necessary to connect a particular defendant with it. *United States v. O'Connell,* 841 F.2d 1408, 1424 (8th Cir.1988), *cert. denied,* 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989); *United States v. Matlock,* 786 F.2d 357, 360 (8th Cir.1986). Indeed, even someone who plays a minor role in a conspiracy may be found guilty. *United States v. Lee,* 743 F.2d 1240, 1250–52 (8th Cir.1984). Participation by a defendant in a single act may in fact demonstrate membership in a conspiracy if the act itself will justify an inference of knowledge of the broader conspiracy. *United States v. Kirk,* 534 F.2d 1262, 1272 (8th Cir.1976), *cert. denied,* 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977).

In this case, the evidence that Tran was a member of the conspiracy was obviously sufficient. For example: (1) on November 27, 1992, Tran played an integral role in the sale of sixteen hundred dollars' worth of crack to Officer Schrader when Tran and Nguyen went to the "stash house" and retrieved the crack cocaine, with Tran returning to deliver the drug to Luu to give to Schrader; (2) Tran was in possession of a set of keys to a towel dispenser that Luu told Officer Schrader was sometimes used to hide crack cocaine and from which a Tylenol bottle frequently seen by Schrader to contain crack cocaine was retrieved; (3) Tran was in possession of keys to the "stash house" which contained articles consistent with the process of converting cocaine power into crack, including a

digital scale, and 52.52 grams of crack cocaine; and (4) Tran personally sold crack to Martin, Mangan, and High.

■ With regard to Count II, to prove that Tran aided and abetted the distribution of crack cocaine, the government had to show that Tran (1) associated himself with the unlawful venture, (2) participated in it as something he wished to bring about, and (3) sought by his actions to make it succeed. *United States v. Lanier,* 838 F.2d 281, 284 (8th Cir.1988).

Once again, the evidence is not only sufficient, but overwhelming, and clearly establishes that Tran assisted Luu and Nguyen in distributing crack cocaine to Schrader. On November 27, 1992, Tran left the Saigon Inn with Nguyen and traveled to the El Madrid apartments. Tran returned to the restaurant a short time later and handed Luu a Tylenol bottle containing crack cocaine. After receiving the bottle from Tran, Luu sold Schrader a significant amount of crack cocaine contained in the Tylenol bottle for sixteen hundred dollars.

### (2)

■ Tran also argues that the district court erred by failing to give an instruction he proposed. Specifically, Tran argues that his "theory-of-the-defense" instruction more clearly set forth his theory of the case than did the court's instruction.

■ A defendant is certainly entitled to have a theory-of-the-defense instruction given to the jury if it is timely submitted, correctly states the law, and is supported by the evidence. *United States v. Jerde,* 841 F.2d 818, 823 (8th Cir.1988). However, a criminal defendant is not entitled to dictate to the district judge the wording of such an instruction. *United States v. Liebo,* 923 F.2d 1308, 1312 (8th Cir.1991).

The district court gave instruction No. 8, patterned after Eighth Circuit model jury instruction 5.06B. *See Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit,* Instruction 5.06B, at 133 (1992) (West ed.). That instruction told the jury in part that it

should understand that merely being present at the scene of an event, or merely acting in the same way as others or merely associating with others, does not prove that a person has joined in an agreement or understanding. A person who has no knowledge of a conspiracy but who happens to act in a way which advances some purpose of one, does not thereby become a member.

Simply stated, Tran got essentially what he wanted and all that he was entitled to.

### (3)

■ Tran argues that the district court erred when it found that he was responsible for 102.81 grams of crack cocaine. *See* U.S.S.G. § 1B1.3(a)(1)(A) & (B). Tran contends that aside from the actual distribution in which he participated, which amounted to 13.04 grams, the balance of the crack was not "foreseeable" by him.

"A defendant who challenges the sentencing court's drug quantity determination naturally faces 'a difficult burden' on appeal." *United States v. Simmons,* 964 F.2d 763, 773 (8th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992) (citations omitted). Reversal is appropriate only if the reviewing court is left with "the definite and firm conviction that a mistake has been committed." *Id.* We have no such definite and firm conviction.

We need not probe the sometimes difficult question of "foreseeability" to conclude that the district court properly calculated the amount of drugs for which Tran was responsible. Not only did he participate in an actual distribution made by Luu and assisted by Nguyen, but Tran also had keys to the towel dispenser where the crack cocaine was hidden, as well as keys to the "stash house" where the drug was processed and found. The district court's finding of approximately 102 grams of cocaine base included drugs obtained from eleven controlled buys, drugs seized from the restaurant, and drugs discovered during a search of the apartment. There was no error in attributing these quantities to Tran.

### C.

We now take up the arguments of Nguyen.

### (1)

■ Nguyen argues that the district court erred when it refused to grant him a continuance in order to secure the presence of three alibi witnesses. We reject Nguyen's argument.

Nguyen's counsel caused process to be served on three witnesses who lived in California. Two of the witnesses would have testified that Nguyen was in California on certain dates in December, 1992. The other would have testified that he worked with Nguyen and that Nguyen resided with him in California the entire month of December. During oral argument, counsel for Nguyen indicated that the process issued to the witnesses compelled them to appear for trial on May 17, 1993, the first day of trial. Counsel waited until after the government had rested and the case was ready for submission to the jury to inform the district judge that the witnesses had not appeared. Counsel then moved for a continuance, but after questioning counsel about the significance of the testimony of the three witnesses, the district judge denied the requested continuance.[5]

"The district court must balance a number of considerations in determining whether or not to grant a continuance and must be afforded substantial discretion. (Citations omitted.) Denial of a continuance is reversible error only if the judge clearly abused this discretion." *United States v. Kopelciw,* 815 F.2d 1235, 1238 (8th Cir.1987). The district court certainly did not abuse its discretion in this case, particularly given the fact that the case was ready to submit to the jury and counsel waited until the last moment to inform the judge of the problem.

However, we must pursue this matter a bit further. Nguyen's claim of error could be taken to implicate his Sixth Amendment right to compulsory process. As we indicated in *Wright v. Lockhart,* 914 F.2d 1093, 1097–98 (8th Cir.1990), *cert. denied,* 498 U.S.

---

5. The district court did grant the defendant a thirty-minute continuance.

1126, 111 S.Ct. 1089, 112 L.Ed.2d 1193 (1991), the right to compulsory process is not absolute. In order to be entitled to compulsory process, the defendant must demonstrate that a witness' "testimony would have been both material and favorable to his [or her] defense." *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982). When used in this context, "materiality" has a particular meaning:

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt.... This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

*Valenzuela–Bernal,* 458 U.S. at 868, 102 S.Ct. at 3447 (quoting *United States v. Agurs,* 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976).

We conclude that there was no reasonable doubt about Nguyen's guilt whether or not his alibi evidence was considered. The testimony of the alibi witnesses related to the month of December, 1992, but did not refute Nguyen's involvement in November, 1992.

We shall briefly summarize the evidence against Nguyen.

Four witnesses identified Nguyen as a member of the "China boys," and all four testified that they had purchased crack from him. Furthermore, the evidence indicates that Nguyen was a lessee of unit 104 of the El Madrid apartments, used as the group's "stash house." On November 27, 1992, three police officers observed Nguyen in connection with the sale of crack cocaine at the Saigon Inn. Schrader encountered Nguyen when Nguyen held the door open for him as he entered the restaurant. Schrader saw Nguyen again when Nguyen said something to Luu, and Luu told Schrader, "It's here." Thereafter, Schrader consummated the sale of sixteen hundred dollars' worth of crack. Surveillance officers saw Nguyen and Tran go to the "stash house" and return.

There was overwhelming evidence that Nguyen was guilty of the crimes charged by virtue of his activities in November, 1992. Since there is no reasonable doubt about his guilt, Nguyen's Sixth Amendment rights were not violated by the district judge's denial of the motion to continue trial.

(2)

██ Nguyen also argues that the district court erred when it admitted the testimony of Jeff Marozick, an officer of the San Jose, California, police department. Officer Marozick testified that on March 10, 1993, he stopped a vehicle driven by Nguyen and recovered a packet of white powder that was located on the center console to the left of the car's gearshift. Subsequent laboratory analysis of the substance in the bundle indicated it was cocaine in salt or powder form. This evidence was admitted under the provisions of Federal Rule of Evidence 404(b), and the district court gave the customary limiting instruction. *See Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit,* Instruction 2.08, at 32 (1992) (West ed.).[6]

The district court noted that "based upon the evidence that you've presented, I don't think the Government needs it, but if you want to offer it, I'm going to permit you to do so." Notwithstanding this caution, the government proceeded to introduce the 404(b) evidence. However, during oral argument, the government seemed to concede that it erred in offering the evidence.

Assuming, without deciding, that admission of the proffered 404(b) evidence was erroneous, we are persuaded that the error, if any, was harmless beyond a reasonable doubt. *United States v. Marshall,* 683 F.2d 1212, 1215 (8th Cir.1982).

In so concluding, we note that the evidence admitted in this case had some relevance. Nguyen gave pretrial notice that he might

---

6. The instruction limited the jury's consideration of this evidence "to decide motive, knowledge and absence of mistake by Defendant Phap Ngoc Nguyen."

rely on the defense of lack of knowledge of contraband and lack of intent. Furthermore, there was evidence that Luu received the cocaine in powder form and that the powder cocaine was converted into crack cocaine thereafter. Thus, this was not a situation where the 404(b) evidence had no relevance whatsoever. *Compare United States v. Fawbush*, 900 F.2d 150, 151–52 (8th Cir.1990). Reversal is required only when " 'the questioned evidence has no bearing upon any of the issues included.' " *Marshall*, 683 F.2d at 1215 (quoting *United States v. Conley*, 523 F.2d 650, 654 (8th Cir.1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327 (1976) (citing *United States v. Thompson*, 503 F.2d 1096, 1098 (8th Cir.1974))).

As previously indicated, the evidence against Nguyen was overwhelming. Four witnesses identified Nguyen as a member of the "China boys," and all four testified that they had purchased crack from him. Furthermore, the evidence indicates that Nguyen was a lessee of unit 104 of the El Madrid apartments, used as the group's "stash house." On November 27, 1992, three police officers observed Nguyen in connection with the sale of crack cocaine at the Saigon Inn. Schrader encountered Nguyen when Nguyen held the door open for him as he entered the restaurant. Schrader saw Nguyen again when Nguyen said something to Luu, and Luu told Schrader, "It's here." Thereafter, Schrader consummated the sale of sixteen hundred dollars' worth of crack. Surveillance officers saw Nguyen and Tran go to the "stash house" and return. Under these circumstances, if admission of the 404(b) evidence was error, it was harmless beyond any reasonable doubt.

### III.

We have carefully reviewed the appellants' assignments of error. We are persuaded that each of the appellants received a fundamentally fair trial and that none of the assignments of error warrant reversal. Accordingly, the conviction and sentence of each of these appellants is affirmed.